Please all rise. Hear ye, hear ye. This Honorable Court for the 2nd Judicial District is now back in session. The Honorable Christopher M. Kennedy, please rise. Good morning, everyone. Please be seated. Your Honor, the second case we've adopted this morning is 2-24-0477. The people of the state of Illinois, the District of Appalachia, the Honorable David White, defendant's cousin, our Honorable Deputy Attorney General, Mr. James F. Kellogg, our Honorable Deputy Attorney General, Ms. Lynn M. Patterson. Morning, Counsel. Mr. Levin, you may begin when ready. Please feel free to adjust the microphone. Thank you, Your Honor. May it please the Court, my name is James Levin, and I'd like to address the issues today. The first issue that I'd like to discuss is the scope of consent issue. So, Officer Weston Search exceeded the scope of consent because he damaged the car. This is one area where the courts are quite uniform. In all the cases, Katz-Vasquez stated that when the police officer damages the car in the process of conducting the search, they've exceeded the scope of consent and conducted an unreasonable search. So the trial judge himself made a finding that the car was damaged, and that finding is entitled to some deference. He stated at page R-446 of the record that the police officer started taking the car apart. At R-64 of the record, he stated that a piece popped off on the side of the road and fell into the roadway. So I think those findings, the judge, are entitled to deference. I want to quibble with you, but doesn't he literally say, but was it damaged? I don't know. Doesn't he say that? I think he actually said... He said the panel popped off and fell into the road, but was it damaged? I don't know. Something like that. He probably was a figure of speech, I think. I will say this. He certainly said a panel popped off and fell into the road. He did say that. And that was at R-64. And it's on the video dash cam as well, 16-58. I saw on the dash cam video there's a lot of debris from car parts on the floorboard, so you could plainly see that the car was damaged. So this is an area where the courts are uniform. If the officer damages the car in the process of conducting a search, then it's unreasonable because it's gone beyond the scope of the search. Courts are somewhat divided on whether the officer is exceeding the scope by conducting a search in hidden compartments of the car. So as far as People v. Davis, that's a 2019 case. The court, First District, held that a search that involved searching for areas that weren't open to view, that that was an illegal and unconstitutional search. But here, this case is much stronger than Davis, even though Davis the court held in favor of the defendant because there was damage to the car. So unless there are any further questions on the scope of consent issue, I'd like to move on to the next. What sets the scope of consent? I'm sorry? What sets the scope of the consent to search the vehicle? What an objective, reasonably person in the position of the suspect would find. Do we look to the words spoken? From the police officer. Or both? Well, the police officer, the judge made a point of this. The police officer said, may I conduct a search of your car? And the judge pointed out, and he made this finding as a principle of law, he says there's a difference between asking for consent to search rather than asking for consent to look around. So he made a distinction on that. There's some water right there. Okay, yeah. Thank you very much. Take your time. Okay. From the body cam, the audio sounded to me like, can I search your car to make sure there's nothing illegal in there? Yeah. So that sounds pretty broad. Nothing illegal. That could be drugs. And they had just been discussing drugs and guns. But the officer didn't ask the defendant, can I rip apart your car? Can I take it apart? Can I damage it when I'm looking for the things I'm looking for? So a reasonable person in Mr. White's position would not find that that's reasonable. That would be going beyond consent. Because the officer didn't ask, may I take apart your car and not damage it? May I do that? May I look inside hidden compartments that are open to view? I think a reasonable person would mean searching, looking in the areas that are open to view. That's what a reasonable person would do. That's more plain view. What about, so the glove compartment was locked. He couldn't get in there. But if he could have opened the glove box by removing the, you know, I don't know, just hypothetically if he can remove the thing on its hinges, how is that any different from popping open the plastic panel at the back of the center console? Well, Le Fay treated this as well as the Illinois case law. Set a boundary here and said, and they relied also on the Humano case, the U.S. Supreme Court case, is that the scope of the search does not extend to locked containers and it does not extend to damaging containers to get to the search. So Humano, Le Fay, the Illinois cases are quite uniform in that respect. Where the Illinois courts are divided, you have Davis on one side and some other. Cats. Cats. Cats pointed out the split of authority. So some cases on one side, some cases on the other side where there are hidden compartments and compartments not open to public view. Courts are divided on that. But as I said, I believe this case is much stronger for the defendant than that type of situation. Davis supports me, but this case is much stronger than Davis, Cats, or Vasquez, because here we have a clear case of the officer damaging the vehicle in the process of the search. But isn't it critical of whether the damage was to the console or the rear of the console, which is where the substance in question was found, right? Well, that's part of the card. So the courts have not made that kind of distinction. They've said where the officer damages the car in the process of the search. Okay. But at that point, there had not been any damage, alleged damage to the car, right? Well, there was in the process of the search, because we could see in the video, we could see all the debris from car parts on the dash. We could see debris in the piece knocked off. If we have a completely legitimate search and then the bumper falls off, that negates the entire search of the car? Well, this case is stronger than that factual scenario. Right. But what I'm driving at, is it in chronological order? In other words, if there's damage that occurs, anything that was prior to the damage, is that also now unconstitutional? Well, the officer didn't get to the drugs until there was damage to the car. What was the damage prior? What was the damage prior? The damage prior was all the debris in the roadway. We could plainly see on the video the debris in the roadway and on the floorboard. That occurred before he found the drugs. Okay. So... Can I... Kat says, and I'm paraphrasing, so forgive me, but something to the effect that the police officer did not alter or damage the vehicle or remove things that could not be easily replaced. The court used the term, maybe echoing medical commercials, minimally invasive. And I guess we don't have that finding that there was damage by the trial court. As I said, I looked at it a couple of times, so I hope I didn't have it wrong. That's always a possibility. Well, I... Something popped out on the road. Was it damaged? I don't know. That's what I recollect as a quote from Judge Clement. I apologize. I don't remember the I don't know quote, but the way Your Honor's phrasing and the context, it's kind of... I mean, he did remove the police officer. It's undisputed, I think, that he used whatever that nylon tool was called. And there was some dispute about what to call it. But he used that to, I'll say, jimmy pieces of the interior paneling of the car, as I understand it. And he did, as I understand it, he popped them off and then found these drugs inside. He also said that, I believe he said that he'd seen misalignment of a rear panel, the rear panel where some of the drugs were found. It seems clear to me, at least, the judge found the search invasive. He says, I don't like what the officer did, but I have to follow it because of the law. So he did it as a legal matter, not as a factual matter. As a factual matter, he found Weston incredible, not credible. In fact, he didn't believe his testimony on several points. He said that what the officer used was a pry bar. And he felt that the officer... This here I did reproduce. It says, this testimony, I think it's from the motion reconsidered. There was a gap in the base, rear base, in the back seat part of the center console, and that's why he chose to look in that area. I think lacks credibility. So his testimony that there was a gap and that's why he chose it, that lacks credibility, the trial court said. And he goes on to say, that's just where he knows to look based on his apparent experience.  It's that exploratory general search, the type of search that the framers condemned, and I had some Supreme Court cases in the opening brief on that point. So that's what he was doing here. But we do agree the console, the back of the console, is not a locked container, correct? The console is a... It depends on how you define locked, but it was closed and it had to be forced open with force. And there was damage. So the Lafave and the cases say either force... Well, they talk about a locked container or a forcibly closed container or damage. So certainly there's damage to the car. And so because there's damage, I think the cases are uniform that that's an unreasonable search. Courts are divided on whether they can look at hidden compartments. I would ask the court to file Davis and Vasquez where a bumper fell off from the back of the car and that was taken off. And that was considered a search that exceeded the scope. So Vasquez supports my client as well. Does it matter that there was a brown paper bag found in the front seat containing pills the police officer believed to be ecstasy? Does that now open up search incident? I addressed that issue in the reply brief, so I rebutted that on several grounds. One, it's forfeiture because it wasn't raised at the trial court level. Two, there's no probable cause that those pills were ecstasy. They were in fact erectile dysfunction pills. There's absolutely no evidence in the record. So it was an illegal arrest. Also under Arizona versus... I didn't see anything in the record that said Viagra was a controlled substance. Right, it wasn't a controlled substance. It was an erectile dysfunction Viagra. And I think the officer acknowledged that. I don't think there's any dispute that that was not meth. It was Viagra. No dispute about that at all. So there's no probable cause that that was meth. Plus, under Arizona, if it began to... If the court looks at officer safety and preservation of evidence, the defendant here is handcuffed in the police car. So there's no danger of destruction of evidence and no threat to the safety of the officer. So the search and arrest option would not apply here for all those grounds. There are some... I realize I am running out of time, so I'd like to address it in my reply too. But the probable cause of search issues are quite important. And here it's really important to look at the time frame about when this search was conducted. And that is, we look at when the search was conducted. And so when the search was conducted, Mr. White was in the police squad car. He did have cannabis in the crotch area of his pants. So the smell was coming from that. The smell was coming from the police car. There was no smell ever coming from the car itself. And we look at it from the time frame of when the search was commenced. Not when the officer approached the car. There's no search done then. It's when the officer placed the defendant into his squad car. So there's never any cannabis found in the car. There's no cannabis smell coming from the car. The cannabis smell was coming from Mr. White when he was seated in the police car. If I may finish that thought, that request. You may. Okay, thank you. So there's no probable cause to search based on the smell of cannabis, therefore distinguishable from people 3 Molina. And in my reply, I'd like to address the United States v. Russ issue about the scope of the search. Thank you very much. Could I ask, didn't the police officer testify while I smelled the pot? I'm not sure anybody uses that term anymore. But I smelled marijuana from the passenger side as I was speaking to the defendant. I remember he said he smelled it while he testified. And he testified he smelled the cannabis coming from the car when he approached the vehicle. But there's nothing on the video that he smelled it. That's one important fact. I mean, you do a good job, a thorough job in your brief, which is very good, by the way, of saying, you know, inconsistencies. There was no pot found in the car. It was only on the defendant. I mean, you'd certainly make a good argument that whatever he smelled was emanating from the defendant's person as opposed to the car. But I don't think there's any trial court findings that would undermine the conclusion that the police officer smelled marijuana from the car and, therefore, I think just picking up on Justice Jorgensen's comment, may have had probable cause to search the car right then and there. Well, let's assume he did smell it from the car. I dispute that because the judge made no findings of credibility in favor of the officer. In fact, the judge kept saying he was incredible, not credible. So that's one point. But under People v. Hill, 2020 Illinois Supreme Court, People v. Kendricks, 4th District, 2023, we look at the probable cause issue from a certain time frame, and that's when the search started. So when he approached the car, the officer, he did not search the car. He first took the defendant out and put him into his police car. So when he conducted the search, there was no smell in the car whatsoever. There's no probable cause to search the car because there's no smell, because the smell is inside the police car because that's where the officer put Mr. White. So there's no probable cause that's completely factually distinct from Molina. There's no smell coming from the car and no marijuana in the car. Is it your position, then, that a police officer should be able to distinguish whether an odor is coming from the defendant inside the car or from the car independent of the defendant? No, I'm not making that argument. The argument I'm making is the time frame of the search is really important here. The officer took the defendant back to his own car, right, and the smell was coming. The officer said, I smell it on you. He smelled the marijuana on the defendant, but he didn't testify that when I made the search, when I conducted the search, I did it as a search for marijuana. He didn't say I smell marijuana in the car when I conducted the search. In fact, the state pointed out that the officer conducted the search for evidence related to the erectile dysfunction pills, not the marijuana, but the erectile dysfunction pills. So he didn't smell the marijuana coming from the car when he conducted the search, and therefore it's a different case from Molina. Plus, as I would like to get to in the reply, because I think it's an important issue, there's no probable cause to believe that there was any marijuana coming from the center counsel, and I raise that issue because of the way the Illinois law is structured and framed. So I am out of time. I'd like to address that badly, but I think I've got to wait until my reply, if I may. Counsel, you will have time in rebuttal. Thank you so much. Ms. Harrington, as soon as you are ready, please feel free to proceed. Good morning, Your Honors. Counsel, may it please the Court, my name is Lynn Harrington, and I represent the people of the state of Illinois. Your Honors, several issues came up in counsel's oral argument that I'd like to address, and I think it all comes down to, or a lot of it comes down to, the problem that defense has with the standard of review. When he starts out his brief, he correctly notes the long-held law that this Court gives the trial courts finding the facts deference, but legal rulings you review de novo. However, he then goes on to say that in a case where there's a warrantless search of an automobile, that's all the defendant has to do to shift the burden to the people to prove that the search was not illegal. That is not the law in Illinois. In fact, in 2017, our Illinois Supreme Court said, and in 2022, this Court said, that the defendant's prima facie case that he has to prove is that he must establish facts and a legal basis that the search or seizure was illegal. And then the burden shifts to the people. Nevertheless, the defendant has the burden throughout the motion to suppress, and that's the problem with defense's case. Because he keeps on talking about the automobile being damaged, but there's absolutely no evidence introduced at the motion to suppress that that car was damaged. These are plastic parts, and you can see from the video, are easily pried off with a tool. Defendant refers to the word as debris. I would say that that's not a correct term, because debris connotes that something was broken apart in pieces. There was nothing like that. There was just simply the parts that Detective Weston pried off. And Justice Mullin, yes, you are correct. First, in the motion to suppress, the trial court said he referred to counsel's comment that the car was broken off, but he never made that comment himself. And then in the ruling on the motion to reconsider, the court said, counsel was referring to the side panel on the dashboard that the detective pried off. The court said, quote, a piece pops off on the side and falls into the roadway. I don't know if it broke or not. I think that's what's being referred to. That's record page 64. So we've got the trial court right away saying, I don't know if it was damaged or not. And whose burden is it? The defendant's. So since there was no damage, we start from the beginning. First, we've got unqualified consent. Detective Weston testifies to the motion to suppress hearing that he asked the defendant, can I search your car? But first he said, hey, do we need heroin, cocaine, meth, or firearms in there? And the defendant says, nope, no drugs at all. Then Detective Weston says, can I search your car to make sure there's nothing in it? And he says, yeah, you can search it. That's unqualified consent. Just like in Katz, Your Honor, where there was unqualified consent and the officer used a screwdriver to pry off the back rear passenger. And as Justice Mullen, you stole my quote, I have here, that the Katz court said, it would be reasonable to find Pantraberry hidden behind a removable door panel. Thus, a reasonable person in the defendant's position would have understood that he had authorized the officer to search behind the vehicle's door panels. Particularly where, as here, the panels could be easily removed and replaced, and the search could be accomplished without causing any structural damage in the car. I just was finishing, sorry. Given the minimally invasive manner in which the search was conducted, and the unlimited consent given by defendants, we hold that the officer's search should not exceed the scope of consent. But you're not concerned that the use of this specialized tool exceeded what a reasonable person might think? If a police officer said to someone, can I search the car, I don't know that they really expect that he's going to start disassembling the interior. Your Honor, I think this case is remarkably similar to Katz. Whether it be a plastic pry tool or a screwdriver, a reasonable person knows if you're giving unqualified consent, go ahead and search my car, then the police officer is allowed to go in there. We all know, Detective Weston specifically testified that in his training and experience, these are where drug dealers keep their drugs. They're in those councils. And it has been repeatedly held that that is okay. In People v. Wolo, in 2010, the 3rd District said it was okay to disassemble an airbag. We've got this case. Defendant, an oral argument talks a lot about People v. Davis, but that case is completely distinguishable from the instant case. That was secret track compartments, apparently, the defendant made, and the People won't comment on that rationale, whether it's good or not, but here we simply don't have that. We have a rear plastic panel that was easily popped off. You can watch it in the video, and you've got the detective's testimony that it literally took minimal effort. The turn of a hand, I believe, was his testimony. There's a use of the tool? No, no. If an officer wanted to go in there and could pop it off himself, that's fine. That's fair game when you have unlimited consent. But in addition to unlimited consent, Your Honor, we also have – How do we get to unlimited consent? Is it the phraseology of the police officer? I think it's the phraseology of the defendant saying, yeah, they'll go ahead and consent. You mean go ahead and search? Yeah, I'm sorry, go ahead and search. But we know that the 3rd District in 92, People v. SESMA said, when his defendant limits consent to only narcotics, he consents to search locations where drugs might reasonably be located. So if this court interprets defendant's, yeah, go ahead and search, that it was in response to Detective Weston's question, do you have any meth, do you have any heroin, do you have any handguns, that, okay, the search was limited to that. But Detective Weston also testified that that is where drugs and handguns had been. In his training experience, that's where drug dealers and other defendants had secreted contraband and handguns. In addition to unlimited consent, Your Honor, here it is clear that Detective Weston had probable cause to search because he smelled raw cannabis. Throughout his briefs, the defendant repeatedly says, Detective Weston did not smell raw cannabis. Unfortunately, you can't just say that's the case when we've got clear testimony from a detective and the trial court obviously believed him because the trial court denied defendant's motion to suppress. Defendant makes a point also about the fact that the trial court didn't say in its findings, I find Detective Weston credible. We all know that that's not the standard. The trial courts are not bound to be specific things. They listen to the testimony, they make a ruling, and they make their findings. And that's what they did here. And it's also common sense that the drugs were in the defendant's pants. And I think it's also common knowledge that the raw marijuana, the smell of it is, I think it's offensive, but it's also very cloying. It stays around. So if it's in his pants or in the rear counsel, that doesn't matter. There's no way the Supreme Court and Molina would have said, oh, but wait a minute, we're going to make a distinction because then these drug dealers can get away with putting their drugs, raw cannabis, on their person, and then that would violate the Constitution to search the car. That's really absurd. Also, even if cannabis was never found, there's still probable cause. Because the law says probable cause is based on probabilities, not certainties. So say you had a car with a big bag of raw cannabis, and guys in the car were dropping little parts of the big bag off, and the big bag finally was removed. That car is going to smell like raw cannabis. And Molina gives the officers the right to search based on that smell. Oh, the defendant also talks a lot about the fact that Detective Weston never said on the video that, oh, I smell raw cannabis. Again, there's no case law that the officer has to tell a defendant exactly what he has determined and whether he has probable cause. In fact, this court, People v. Sims, in 2022, addressed that exact issue. And it said, we also find unavailing defendant's assertion that the officer's credibility was undermined because he never told defendant that he smelled the odor of cannabis. We do not find that problematic, as the officer was not precluded from asking general questions about cannabis. So that doesn't help defendant's case at all. I'd also like to discuss the scope of defendant's consent allowed for the rear counsel. There was no evidence introduced at the hearing that any property was destroyed. We've discussed that. Defendant talks about People v. Vasquez, completely distinguishable from the instant case, Your Honor. That case was bad. There was no reasonable stop. It was an illegal search. It was an illegal arrest. And the defendant signed this long written consent form, but unfortunately for the police, it did not say we consent to search the bumper of your car. So they take the bumper off. They find $300,000 in U.S. currency. And it gets suppressed. That's nothing like the instant case. Also in this case, I'm sorry, in this court in 2020, we had People v. McGee that reiterated the scope of a warrantless search under the automobile exception is defined by the object of the search and the places where there is probable cause to believe the contraband may be found. We have that here. We have that here from the smell of cannabis and then Detective Weston's testimony that this is in his training and experience. This is where contraband was found. You might remember People v. McGee is the one where a police officer pulls the car over, the passenger has an open bottle of beer in between his legs, and I think one on the ground. Okay, that's a violation of the Illinois Vehicle Code. So then the officer has probable cause to search the car for any area that a bottle of beer, an open bottle of beer may be found. So he searches the glove box and he finds contraband, and that's okay. Exactly like what went on here. With regard to the search incident to arrest, Your Honor, I am aware that defendants made the argument that this is forfeited, but of course you know forfeiture is a limitation on us, the parties, but certainly not you, the court. So if you look at search incident to arrest, it appears to be a very open and shut case here. Detective Weston, contrary to what defense said on oral, did testify that based on his training and experience the pills looked like ecstasy. That was enough for him to arrest. The fact that the defendant said Just to test it a little bit, I believe that the testimony was the defendant told him it was Viagra and Viagra is not a controlled substance. Yes. Does that mean that subsequent information, and I don't know if the pills are in the record, but I believe I saw a picture of the pills, yes. Did that mean that, okay, it must be ecstasy, you're under arrest. No, it's Viagra. Did the officer then have a duty to do a field test or? No, Your Honor, I don't think there's that. I mean, it's easily done. You take a look at the pill, you can Google it, Blue Oval, you know, with whatever the markings on it are, you can easily Google any pill and find out what it is. Well, yes, and I can tell you that they were not blue pills. They were oval white pills. And again, the trial court could rely on Detective Weston's testimony, but in his training experience, that was ecstasy. So that's enough for him to arrest him, and he did. He took him from the front seat of the car to the back seat of the car, and he handcuffed him. That's the second exception to the warrant requirement for search incidents for arrest. It's whether the officer had a reasonable belief that the evidence relevant to a crime may be found in the car. That's a reasonable belief. He knows, based on his training and experience, that it's ecstasy. He arrests him, he handcuffs him, then he searches the car. So that is another way in which the motion to suppress was properly denied here. A defendant also makes the argument that the people can't argue both, and of course that's incorrect. We can show you what happened here. We can say he had enough evidence from the arrest to search the car. He also had blanket consent. He also had limited consent because they talked about, you know, their drugs, meth, and guns in the car. The scope of the Rear's Counsel was proper. Everything in this case points to the fact that the motion to suppress was properly denied. I have no questions. If the Court doesn't have any more questions? We do not. Thank you, Counsel. Thank you, Your Honors. For all these reasons, the State respectfully requests that this Court affirm the trial court's order denying the defendant's motion to suppress. Thank you. Thank you, Counsel. Mr. Levin, your rebuttal. Thank you, Your Honor.  So the State is saying that the officer conducted the search because the, you know, he thought the drugs were meth, and so he's looking for evidence related to the meth that he supposedly found. So he wasn't searching the car for cannabis. I think that argument undermines the argument that there's, he searched the car because he had probable cause to search the car for cannabis. Plus, I think the State did not address the Gant, Arizona v. Gant, that he's inside the police car, handcuffed. So there's no danger of lost evidence or safety concerns. Plus, this issue was not addressed, so the record wasn't developed in the trial court. I didn't see any evidence in the record that those pills were Viagra, I mean were meth, except what the officer said. There's no objective evidence. That's what a probable cause analysis does, is looks at objective evidence to support whether there's probable cause or not. The officer's subjective belief that it was Viagra was meth, and the judge made no determination because the issue wasn't even raised. So the record doesn't even develop enough for the State to raise such an issue. At the beginning of the oral argument, the State noted that the, was trying to rebut the defense argument that the burden shifted to the State, and I cited Peoples v. Gibson, Illinois Supreme Court case, where the Illinois Supreme Court found that the burden did shift based on the worthless search of the trunk of the car. So this case is on all fours with that. The judge didn't find that this search was minimally invasive, like the positions stated by the State. He found that it was very invasive. He said that I didn't like what the State did, and he didn't resolve it as a factual matter. He resolved it as a legal matter based on what the officer asked the defendant, may I search, instead of saying may I look. And that's not enough of a basis. The officer, there's no reasonable basis to say that the search would extend to what the officer did today. There's no, the officer didn't ask may I use a pry bar to open up compartments. The officer didn't ask, well, may I damage the car, may I pry things open. And it looks like he took some time. It wasn't like five seconds the thing was off. It took minutes for him to get that thing open. It took a lot of effort, and the judge didn't like it. I think the judge had it right, except he didn't apply the law correctly. I think he had it right as a matter of, as a factual matter. And I would like to make something very clear. Let's say on the probable cause issue, if the officer testified truthfully that he smelled cannabis coming from the car, when he approached the car, he could have searched the car based on that. But we have to look at the time frame here. And I don't think the state really addressed that in the oral argument or the briefs. So again, I point to Hill and I point to Hendricks that the search was conducted when Mr. White was in the police car. And he had cannabis in his pants. There's no cannabis smell when the search was conducted. The officer didn't conduct the search when he approached the car. And the defendant rolled down the window. And he didn't testify. He didn't state on the video, I smelled cannabis coming from the car when I approached the car. He said on the video, I smelled it when I approached the vehicle. So there is a probable cause. This is different from Molina. And I'd like to address that alternative argument I raised with the Senate counsel. So this issue involves the scope of the search, which makes it different from Molina. Because that just didn't address the scope of the search. And here we have the officer. Illinois law kind of changes what Ross is all about, I believe. Because it's United States v. Ross. Because the character of the container itself is determinative of whether cannabis was illegally stored. So it's not just using a probable cause based on the smell alone. What he's looking for is a probable cause to believe that the defendant illegally stored cannabis. May I request that I finish? It's in argument three of the briefs. But we have the regulation act. We have the vehicle code. There is no violation if there was cannabis kept in the Senate counsel. First of all, there's no cannabis kept there. But even if there was, it would have been illegally stored because there's no smell in it. It's a vacuum sealed package. It was older. I'm sorry. What was vacuum sealed? The vacuum sealed were the cocaine and the heroin. Was there any cannabis that was vacuum sealed? No, no cannabis found in the car whatsoever. I'm just talking hypothetically, let's say there was cannabis in the Senate counsel. If you're going to say you could look to the Senate counsel for cannabis, I deny that. Let's say you can look there. Let's say the state says you can look there. But there's no smell in it. It's odor resistant. It's sealed. And it's child resistant. So anything stored in there is compliant with Illinois law. So looking in there is beyond the scope of what's a permissible search. Because he's not going to find any illegally stored cannabis in that Senate counsel. He's not going to find it. Because if there was cannabis in that Senate counsel, it would have been reasonably inaccessible to the defendant while driving under the Regulation Act. And under the vehicle code, it was child resistant because it was, you know, in a compartment that was sealed. And it was sealed. That's the second requirement. And there was no odor emitting from it. And therefore, this is a different case than the United States view was. I'm sorry. I was trying to talk as fast as I can. That's all right. So anyways, I ask the court to examine the briefs on that third issue. And I thank the court very much. Unless the court has any further questions. All right. Thank you very much, counsel. Thank you. We thank the attorneys for their argument. We will take the matter under advisement and issue a ruling in due course.